HAILYN J. CHEN (SBN 237436)
hailyn.chen@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Fl.
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

USHA C. VANCE (SBN 309353)
usha.vance@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Fl.
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

JEROME MAYER-CANTÚ (SBN 291623)
jerome.mayer-cantu@ucop.edu
UNIVERSITY OF CALIFORNIA
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA  94607-5200
Telephone:   (510) 987-9800
Facsimile:    (510) 987-9757

Attorneys for The Regents of the University
of California

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUSTINE TANJAYA,<br><br>              Plaintiff,<br><br>        vs.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and DOES 1 through 25, inclusive,<br><br>              Defendants. | Case No. 2:19-cv-02956 GW (FFMx)<br><br>**DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. George H. Wu<br>Courtroom: 9D<br>Date: August 29, 2019<br>Time: 8:30 a.m.<br><br>Filed concurrently:<br>(1) Declaration and Exhibits<br>(2) Request for Judicial Notice<br>(3) [Proposed] Order<br>(4) Application for Leave to File Under Seal, Declaration, Exhibits, and [Proposed] Order |

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 29, 2019 at 8:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9D of this Court, located at 350 West 1st Street, Los Angeles, California 90012, Defendant The Regents of the University of California ("UC") will move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing all claims in Plaintiff's First Amended Complaint, (ECF No. 16), with prejudice.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place telephonically on June 20, 2019.

Plaintiffs base their motion on this notice of motion, the attached memorandum of points and authorities, the attached Declaration of Candi N. Smiley ("Decl.") and supporting exhibits, the attached Request for Judicial Notice, and the proposed Order.

DATED:  June 27, 2019

MUNGER, TOLLES & OLSON LLP
HAILYN J. CHEN
USHA C. VANCE


By:    /s/ *Usha C. Vance*
USHA C. VANCE
Attorneys for The Regents of the University of California

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PLAINTIFF'S ALLEGATIONS ................................................................ 2

ARGUMENT ......................................................................................... 4

I.  Plaintiff's Federal Claims (Claims 1, 2 and 4) All Fail Because Plaintiff Has Not Pled Facts Sufficient to Demonstrate that UC Itself Engaged in Misconduct ....................................................................................... 4

    A.  Plaintiff Has Not Adequately Pled Her Sex Discrimination and Hostile Environment/*Quid Pro Quo* Harassment Claims (Claims 1 and 4)........................................................................................ 5

        1.  Plaintiff Has Not Adequately Pled Deliberate Indifference ......... 7

        2.  Plaintiff Has Not Adequately Pled that UC's Deliberate Indifference Subjected Her to Severe and Pervasive Harassment.............................................................................. 11

        3.  The First Amended Complaint Does Not Supply the Necessary Factual Predicates for Injunctive Relief.................. 15

    B.  Plaintiff Has Not Adequately Pled Her Retaliation Claim (Claim 2)................................................................................................ 16

II.  Plaintiff's State-Law Claim (Claim 3) Fails for Four Independent Reasons.......................................................................................... 19

CONCLUSION.......................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ............................................................ 5, 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................ 4, passim

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................ 4, 12

*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979) ................................................................. 5

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ................................................................ 20

*Cousins v. Lockyer*,
  568 F.3d 1063 (9th Cir. 2009) .................................................. 17

*Cuviello v. City of Oakland*,
  No. 06-cv-5517 MHP (EMC), 2009 WL 734676 (N.D. Cal. Mar. 19,
  2009) ...................................................................................... 15

*Darensburg v. Metro. Transp. Comm'n*,
  636 F.3d 511 (9th Cir. 2011) .................................................... 21

*Davis ex rel. La Shonda D. v. Monroe Cty. Bd. of Educ.*,
  526 U.S. 629 (1999) .......................................................... 1, passim

*Davis v. Cal. Health & Human Servs. Agency*,
  No. 00-cv-2532 SBA ADR, 2001 WL 1772763 (N.D. Cal. Aug. 21,
  2001) ...................................................................................... 20

*Davis v. Folsom Cordova Unif. Sch. Dist.*,
  No. 11-cv-1242 KJM DAD PS, 2013 WL 268925 (E.D. Cal. Jan.
  23, 2013), *report & recommendation adopted by* 2013 WL
  1325273, *aff'd*, 674 F. App'x 699 (9th Cir. 2017) ...................... 18

*Doe v. Blackburn Coll.*,
  No. 06-cv-3205, 2012 WL 640046 (C.D. Ill. Feb. 27, 2012)............ 11

1

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

2                                                                    <u>Page(s)</u>

3  *Doe v. Regents of the Univ. of Cal.*,
4    No. 2:15-cv-2478-SVW-JEM, 2015 WL 13755510 (C.D. Cal. Dec.
     14, 2015) ....................................................................................................... 6

5

6  *Doe v. Salisbury Univ.*,
     123 F. Supp. 3d 748 (D. Md. 2015) ..................................................... 17

7

8  *Doe v. Univ. of Ala. in Huntsville*,
     177 F. Supp. 3d 1380 (N.D. Ala. 2016) ............................................. 7

9  *Doe v. Univ. of Pac.*,
10   467 F. App'x 685 (9th Cir. 2012) ......................................... 16, 18

11  *Emeldi v. Univ. of Oregon*,
12    698 F.3d 715 (9th Cir. 2012) ............................................... 18

13  *FTC v. Productive Mktg., Inc.*,
14    136 F. Supp. 2d 1096 (C.D. Cal. 2001) .................................. 16

15  *Garcia ex rel. Marin v. Clovis Unif. Sch. Dist.*,
      627 F. Supp. 2d 1187 (E.D. Cal. 2009) ................................. 12

16

17  *Gebser v. Lago Vista Indep. Schl. Dist.*,
      524 U.S. 274 (1998) ................................................. 5, passim

18

19  *Ha v. Nw. Univ.*,
      No. 14-cv-895, 2014 WL 5893292 (N.D. Ill. Nov. 13, 2014) ............... 8, passim

20  *J.E.L. v. San Francisco Unif. Sch. Dist.*,
21    185 F. Supp. 3d 1196 (N.D. Cal. 2016) ................................. 20

22  *Jackson v. Birmingham Bd. of Educ.*,
23    544 U.S. 167 (2005) .......................................................... 19

24  *Jones v. Beverly Hills Unif. Sch. Dist.*,
      No. 08-cv-7201-JFW (PJW), 2010 WL 1222016 (C.D. Cal. Mar. 24,
25    2010) ....................................................................... 17, 18

26

27  *Karasek v. Regents of the Univ. of Cal.*,
      No. 15-cv-3717-WHO, 2015 WL 8527338 (N.D. Cal. Dec. 11,
28    2015) ...................................................................... 6, 14

-iii-

1
2

## **TABLE OF AUTHORITIES**
### (Continued)

Page(s)

3
4

*Karasek v. Regents of the Univ. of Cal.*,
   No. 15-cv-3717-WHO, 2016 WL 4036104 (N.D. Cal. July 28,
   2016) ............................................................................................................. 8, 13

5
6

*Keyes v. Sch. Dist. No. 1*,
   895 F.2d 659 (10th Cir. 1990) ............................................................................ 15

7
8

*KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*,
   No. 12-cv-2200 (ER), 2012 WL 1521060 (S.D.N.Y. Apr. 30, 2012) ................... 7

9
10

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ............................................................................... 10

11
12

*Lopez v. Regents of Univ. of Cal.*,
   5 F. Supp. 3d 1106 (N.D. Cal. 2013) ................................................................... 13

13
14

*M.S. v. Cty. of Ventura*,
   No. 16-cv-3084-BRO, 2016 WL 11506613 (C.D. Cal. Oct. 24,
   2016) ..................................................................................................................... 20

15
16
17

*Mandel v. Bd. of Trs. of Cal. St. Univ.*,
   No. 17-cv-3511-WHO, 2018 WL 5458739 (N.D. Cal. Oct. 29,
   2018) ................................................................................................................ 10, 11

18
19

*Mansourian v. Regents of the Univ. of Cal.*,
   602 F.3d 957 (9th Cir. 2010) ............................................................................. 6, 19

20
21

*Mir v. Little Co. of Mary. Hosp.*,
   844 F.2d 646 (9th Cir. 1988) ................................................................................. 4

22
23

*Moore v. Murray State University*,
   No. 5:12-cv-00178, 2013 WL 960320 (W.D. Ky. Mar. 12, 2013) ...................... 13

24

*Moore v. Regents of the Univ. of Cal.*,
   No. 15-cv-5779-RS, 2016 WL 2961984 (N.D. Cal. May 23, 2016) ................... 10

25
26
27

*Mosavi v. Mt. San Antonio Coll.*,
   No. 15-cv-4147-MWF, 2018 WL 5911764 (C.D. Cal. May 10,
   2018) .................................................................................................................. 7, 8

28

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ........................................................................ 4

*Oden v. N. Marianas Coll.*,
440 F.3d 1085 (9th Cir. 2006) ............................................................... 8, 10

*Ollier v. Sweetwater Union High Sch. Dist.*,
768 F.3d 843 (9th Cir. 2014) ............................................................... 16, 17

*Ove v. Gwinn*,
264 F.3d 817 (9th Cir. 2001) ...................................................................... 19

*Prescott v. Rady Children's Hosp.—San Diego*,
265 F. Supp. 3d 1090 (S.D. Cal. 2017) ............................................... 20, 21

*Reese v. Jefferson Sch. Dist. No. 14J*,
208 F.3d 736 (9th Cir. 2000) ............................................................... 11, 12

*Rouse v. Duke Univ.*,
914 F. Supp. 2d 717 (M.D.N.C. 2012), *aff'd*, 535 F. App'x 289 (4th
Cir. 2013) ..................................................................................................... 13

*Sanchez v. Brawley Elem. Sch. Dist.*,
719 F. App'x 723 (9th Cir. 2018) ................................................................ 18

*Santos v. Merritt Coll.*,
No. 07-cv-5227 EMC, 2008 WL 2622792 (N.D. Cal. July 1, 2008) ................. 20

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) ...................................................................... 4

*Stanley v. Trs. of Cal. State Univ.*,
433 F.3d 1129 (9th Cir. 2006) ............................................................... 6, 11

*Summy-Long v. Pa. St. Univ.*,
715 F. App'x 179 (3d Cir. 2017) .............................................................. 5, 6

*Thomas v. Meharry Medical College*,
1 F. Supp. 3d 816 (M.D. Tenn. 2014) ........................................................ 13

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966) .................................................................................... 20

1
2

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

3
4

*United States v. Baisden*,
  692 F. App'x 878 (9th Cir. 2017) ........................................................ 15

5
6

*United States v. Cty. of Maricopa*,
  889 F.3d 648 (9th Cir. 2018) ........................................................ 1, 5, 7

7
8

*Whitaker v. BOP FIGAT7TH LLC*,
  No. 18-cv-1360-RSWL-E, 2019 WL 1081207 (C.D. Cal. Mar. 6,
  2019) ........................................................................................................ 20

9
10

*Williams v. Bd. of Regents of Univ. of Ga.*,
  477 F.3d 1282 (11th Cir. 2007) ........................................................ 12

11
12

*Zenith Radio Corp. v. Hazeltine Res., Inc.*,
  395 U.S. 100 (1969) ........................................................................... 16

13

**STATE CASES**

14
15

*City & Cty. of San Francisco v. Fair Emp. & Housing Comm'n*,
  191 Cal. App. 3d 976 (1987) ........................................................... 21

16
17

*Donovan v. Poway Unif. Sch. Dist.*,
  167 Cal. App. 4th 567 (2008) ..................................................... 21, 22

18

**FEDERAL STATUTES**

19

20 U.S.C. § 1681 *et seq.* .............................................................. 1, passim

20

28 U.S.C. § 1367(c)(3) ........................................................................ 19

21

42 U.S.C. § 2000d............................................................................... 5

22
23

**STATE STATUTES**

24

Cal. Educ. Code § 201(g) ..................................................................... 21

25

Cal. Govt. Code § 11135 ........................................................ 2, 3, 19, 20, 21

26

Cal. Govt. Code § 11139 ........................................................................ 20

27

**FEDERAL RULES**

28

Fed. R. Civ. P. 8(a)(2)......................................................................... 6

1

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

2

<u>Page(s)</u>

3

Fed. R. Civ. P. 12(b)(6) ................................................................................ 4

4

Fed. R. Civ. P. 65(d) ................................................................................... 15

5

Fed. R. Evid. 201 .......................................................................................... 4

6

**STATE REGULATIONS**

7

2 Cal. Code of Regs. § 11143 ..................................................................... 20

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Regents of the University of California and all of its campuses, including UCLA ("UC" or "University"), are committed to creating and maintaining a community where all persons who participate in UC programs and activities can work and learn together in an environment free from harassment and discrimination. The University takes sexual harassment and discrimination seriously; its policy is to respond promptly to reports of sexual harassment and discrimination and to take appropriate action to prevent, correct, and, when necessary, discipline such behavior.

Because the appropriate response to reports of misconduct is often difficult to identify, and because reasonable minds may differ about the best response in any particular case, the Supreme Court has cautioned that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis ex rel. La Shonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). Relatedly, in recognition of the special role played by universities, federal law limits a university's liability in cases of sexual harassment and discrimination "to [its] own misconduct" and provides that a university "cannot be held vicariously liable on a *respondeat superior* theory" for the conduct of its employees. *United States v. Cty. of Maricopa*, 889 F.3d 648, 652 & n.2 (9th Cir. 2018).

Plaintiff Justine Tanjaya's First Amended Complaint runs afoul of these basic principles. Plaintiff claims that she was sexually harassed and subjected to *quid pro quo* demands by her professor. But Plaintiff's First Amended Complaint is long on allegations regarding her professor, and short on allegations regarding the University's own response to her report of misconduct by her professor. As judicially noticeable documents show, the University in fact promptly initiated and completed an investigation upon receiving Plaintiff's report of sexual harassment.

Plaintiff filed claims against UC for various forms of sex discrimination in violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681

*et seq.* (Title IX), and California Government Code § 11135.  Her federal claims cannot survive in the face of the University's prompt and diligent response to Plaintiff's report of misconduct by her professor.  Her claims against the University for sexual harassment and for creating a hostile environment or engaging in *quid pro quo* harassment under Title IX fail for two independent reasons:  she has not pled facts sufficient to establish that the University was deliberately indifferent to known acts of harassment or other misconduct, and she has not alleged that the University's deliberate indifference subjected her to further harassment or misconduct.  Plaintiff's claim for retaliation in violation of Title IX similarly fails because Plaintiff has not pointed to any adverse action taken by the University in response to her protected activity.

Plaintiff's state-law discrimination claim pursuant to California Government Code § 11135 must also be dismissed.  First, if the Court dismisses Plaintiff's federal claims, then the Court should decline to exercise supplemental jurisdiction over her Section 11135 claim.  Second, if the Court reaches Plaintiff's state-law claim, her failure to allege administrative exhaustion of that claim justifies dismissal.  Third, Plaintiff's request for damages contravenes state law, so her Section 11135 claim must be dismissed to the extent she seeks anything other than equitable relief.  Fourth, Section 11135 is construed consistently with Title IX.  Just as Plaintiff has failed to allege facts sufficient to support her federal discrimination claims, she has also failed to adequately plead her state-law claim.

## PLAINTIFF'S ALLEGATIONS

Plaintiff Justine Tanjaya alleges that she experienced sexual harassment while enrolled at the University of California, Los Angeles's School of Dentistry ("School of Dentistry") as a doctoral candidate in Oral Biology.  (ECF No. 16 (First Amended Compl. ("FAC") ¶¶ 3, 5).)  Those allegations form the basis of her claims that: UC discriminated against her on the basis of sex in violation of Title IX and Section

11135; UC retaliated against her in violation of Title IX; and UC created a hostile environment and engaged in *quid pro quo* harassment in violation of Title IX.

Plaintiff alleges that on April 13, 2018 she visited the School of Dentistry's Senior Associate Dean, Dr. Sotirios Tetradis, for guidance in handling her relationship with her research mentor, Dr. Kang Ting.  (*Id.* ¶ 12.)  According to Plaintiff, Dr. Tetradis instructed her to close the door and made physical advances, namely stroking her hand and moving close enough to her that their legs touched.  (*Id.* ¶¶ 12-13, 15.)  Plaintiff alleges that Dr. Tetradis asked Plaintiff to send him a series of email messages between Plaintiff and Dr. Ting, and for other information that would cast Dr. Ting in a negative light.  (*Id.* ¶¶ 13-14, 16.)  Plaintiff further alleges that Dr. Tetradis told her that if she did not cooperate, she would not successfully graduate from her doctoral program.  (*Id.* ¶ 17.)

Five days later, Plaintiff allegedly met again with Dr. Tetradis, who purportedly pressured her to file a Title IX complaint against Dr. Ting and boasted of his power within the University.  (*Id.* ¶¶ 20-22.)  Plaintiff claims that Dr. Tetradis closed the doors and stroked her back and arms, "perhaps under the guise of comforting her."  (*Id.* ¶ 22.)  Plaintiff further alleges that in June 2018 Dr. Tetradis again threatened her academic standing and made attempts to track her down, including by coming unexpectedly to the clinic where she was working.  (*Id.* ¶ 24.)

Plaintiff filed a complaint with UCLA's Title IX Office against Dr. Tetradis on June 25, 2018.  (*Id.* ¶ 25.)  She asserts that, following her complaint, "retaliation from Dr. Tetradis and others associated with him continued."  (*Id.* ¶ 26.)  Plaintiff does not allege that she had any further contact with Dr. Tetradis or that she experienced any further physical advances by Dr. Tetradis.

Plaintiff also contends that "any supposed confidentiality regarding her Title IX complaint was non-existent, as another official outside the Title IX office had a copy of her sworn statement and questioned her about it in a surprise meeting."  (*Id.*

¶ 26.)  Plaintiff does not make any further allegations regarding UC's response to her Title IX complaint.

## ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint where the plaintiff has failed either to state a cognizable legal theory or to allege facts sufficient to support a cognizable legal theory. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  On a motion to dismiss, the court accepts facts alleged in the complaint as true and may properly consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201.  *See Mir v. Little Co. of Mary. Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

UC vigorously disputes many of the factual allegations in Plaintiff's Complaint.  Nevertheless, even accepting those allegations as true for purposes of this motion to dismiss, Plaintiff has failed to state any claim upon which relief may be granted.

## I. Plaintiff's Federal Claims (Claims 1, 2 and 4) All Fail Because Plaintiff Has Not Pled Facts Sufficient to Demonstrate that UC Itself Engaged in Misconduct

Plaintiff's federal claims assert various violations of Title IX, which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

1   any education program or activity receiving Federal financial assistance," subject to

2   certain exceptions not at issue here.  20 U.S.C. § 1681.

3          Plaintiff's Title IX claims all fail as a matter of law for the same reason:

4   UC's liability under Title IX "is limited to [its] own misconduct," and UC "cannot

5   be held vicariously liable on a *respondeat superior* theory" for the conduct of its

6   employees.  *Cty. of Maricopa*, 889 F.3d at 652 & n.2.[1]  Plaintiff does not allege that

7   UC itself engaged in misconduct that would subject it to liability under Title IX.

8   Thus, she has not pled a *prima facie* case under that statute, and her claims must be

9   dismissed.  Further, Plaintiff has not made out a *prima facie* case for retaliation in

10  violation of Title IX because she has not alleged that she experienced adverse acts as

11  a consequence of her protected activity.

12      **A.    Plaintiff Has Not Adequately Pled Her Sex Discrimination and Hostile Environment/*Quid Pro Quo* Harassment Claims (Claims 1 and 4)**

13

14          Plaintiff's first claim asserts that UC discriminated against her on the basis of

15  sex in violation of Title IX.  (FAC ¶¶ 30-36.)  Plaintiff's fourth claim similarly

16  asserts that UC created a hostile environment and engaged in *quid pro quo*

17  harassment in violation of Title IX.  (*Id.* ¶¶ 53-59.)  She bases those claims on the

18  alleged sexual harassment that she experienced at the hands of Dr. Tetradis.  (*Id.* ¶¶

19  11-29.)[2]

20

_____

21  [1] As the Supreme Court has recognized, Title IX "was modeled after Title VI" of the

22  Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* (Title VI), and the "two statutes operate in the same manner."  *Gebser v. Lago Vista Indep. Schl. Dist.*, 524 U.S. 274,

23  286 (1998).  The same standards apply to private claims arising under both statutes.

24  *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694-703 (1979).  Accordingly, precedent applying Titles VI

25  and IX is used interchangeably herein.

26  [2] Given those factual predicates, Plaintiff's discrimination claim is best understood

27  as a "disparate treatment claim[ ]," which "involve[s] discriminatory decisions regarding an individual."  *Summy-Long v. Pa. St. Univ.*, 715 F. App'x 179, 182 (3d

28  Cir. 2017).  Disparate impact claims, in contrast, arise "when policies, practices,

Only a university's "deliberate failure to curtail known" misconduct by a faculty member can render the university liable under Title IX for faculty-student harassment and hostile environment/*quid pro quo* harassment claims like Plaintiff's. *Mansourian v. Regents of the Univ. of Cal.*, 602 F.3d 957, 967 (9th Cir. 2010); *see Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1137 (9th Cir. 2006). The five-pronged test from *Davis ex rel. La Shonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999), determines a university's liability in such cases. *See Karasek v. Regents of the Univ. of Cal.*, No. 15-cv-3717-WHO, 2015 WL 8527338, at *8 & n.8 (N.D. Cal. Dec. 11, 2015). A plaintiff must allege:

(1) that the university "exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red]";

(2) that the harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school";

(3) that the university had "actual knowledge" of the harassment;

(4) that the university acted with "deliberate indifference" to the harassment; and

(5) that the university's deliberate indifference subjected the student to harassment, i.e. "cause[d] [the student] to undergo harassment or ma[d]e [the

---

rules or other systems that appear to be neutral result in a disproportionate effect on a protected group." *Id.* Plaintiff makes a passing gesture at pleading a disparate impact claim. (FAC ¶ 33 (alleging that UC's "policies and practices create a disparate impact on female students").). But that claim is neither cognizable nor adequately pled. "Title IX does not provide a private right of action to challenge disciplinary policies based on disparate impact." *Doe v. Regents of the Univ. of Cal.*, No. 2:15-cv-2478-SVW-JEM, 2015 WL 13755510, at *3 (C.D. Cal. Dec. 14, 2015) (citing *Alexander*, 532 U.S. at 280). And Plaintiff alleges no facts whatsoever in support of a disparate impact theory of liability. *See Iqbal*, 556 U.S. at 677-78 (Federal Rule of Civil Procedure 8(a)(2) requires more than "'naked assertion[s]' devoid of 'further factual enhancement.'").

student] liable or vulnerable to it." *Davis*, 526 U.S. at 645, 650 (internal quotation marks omitted).[3]

Applying that standard here, Plaintiff's first and fourth claims should be dismissed for two reasons. First, Plaintiff has not alleged conduct by UC that rises to the level of deliberate indifference. Second, Plaintiff has not pled facts demonstrating that UC's conduct subjected her to severe and pervasive harassment. Plaintiff's claims for equitable relief fail for the additional reason that her Complaint lacks the necessary factual basis for a particularized injunction against UC.

### 1.   Plaintiff Has Not Adequately Pled Deliberate Indifference

Plaintiff has not pled facts sufficient to support a claim of deliberate indifference. "[D]eliberate indifference is an exacting standard." *Mosavi v. Mt. San Antonio Coll.*, No. 15-cv-4147-MWF (AFMx), 2018 WL 5911764, at *7 (C.D. Cal.

---

[3] The Supreme Court developed the deliberate indifference standard for university liability under Title IX in the context of private claims for damages. *See Davis*, 526 U.S. at 633; *Gebser*, 524 U.S. at 277. But nothing in the Court's decisions excluded application of that standard to private claims for injunctive relief. *See, e.g.*, *id.* at 289 (reasoning that "a judicially *implied* system of enforcement [that] permits substantial liability without regard to the recipient's knowledge or its corrective actions upon receiving notice" would be inconsistent with the statutory text (emphasis in original)); *Davis*, 526 U.S. at 644-46 (basing decision on textual analysis relevant regardless of relief sought). As the Court explained in *Gebser*, unlike Title VII, which expressly adopts agency principles, "Title IX contains no comparable reference to an educational institution's 'agents'" and thus does not "call for application of agency principles." 524 U.S. at 283. Many federal courts have applied the deliberate indifference standard to Title IX claims seeking equitable relief. *See, e.g.*, *Doe v. Univ. of Ala. in Huntsville*, 177 F. Supp. 3d 1380, 1384-86, 1391 (N.D. Ala. 2016); *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, No. 12-cv-2200 (ER), 2012 WL 1521060, at *3 (S.D.N.Y. Apr. 30, 2012); *see also Cty. of Maricopa*, 889 F.3d at 652 (stating, in case involving only injunctive relief, that "while an entity cannot be held vicariously liable on a *respondeat superior* theory, it can be held liable under Title VI if an official with power to take corrective measures is 'deliberately indifferent to known acts' of discrimination"). Plaintiff's claims for injunctive relief therefore rise and fall with her claims for damages.

May 10, 2018) (internal quotation marks omitted).  A university's "response to the harassment or lack thereof" must be "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.  Allegations that the university was merely "negligent, lazy, or careless" are not enough.  *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006).  Rather, the question is whether the university "made an official decision not to remedy the violation." *Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)) (alteration omitted); *see Ha v. Nw. Univ.*, No. 14-cv-895, 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014) ("It is only where the school . . . does nothing about [harassment] or takes insufficient actions to stop it that it shows deliberate indifference.").

Plaintiff states that she reported Dr. Tetradis's alleged sexual harassment on June 25, 2018.  (FAC ¶ 25.)  Her sole allegation regarding UC's conduct in the wake of her report is that one unknown, unnamed "official outside the Title IX office" somehow obtained a copy of a "sworn statement" relevant to her report and questioned her about its contents.  (*Id.* ¶ 26.)  But Plaintiff does not actually allege that UC itself provided her statement to an "official outside the Title IX office," or that doing so would violate any UC policy regarding Title IX investigations.[4]  Moreover, a meeting to address Plaintiff's report does not signal deliberate indifference; if anything, it reflects the University's attentiveness.

---

[4] Even if Plaintiff had made such allegations, and "even assuming that a school's violation of its own sexual harassment policy is relevant to the deliberate indifference analysis," the mere transmission of Plaintiff's sworn statement outside the Title IX Office cannot "be said to rise above the level of nonactionable negligence, laziness, or carelessness." *Karasek v. Regents of the Univ. of Cal.*, No. 15-cv-3717-WHO, 2016 WL 4036104, at *14 (N.D. Cal. July 28, 2016); *see Mosavi*, 2018 WL 5911764, at *7 ("[A]n institution's failure to comply with its own policies does not establish deliberate indifference."); *Oden*, 440 F.3d at 1089 (violation of policy was no "more than negligent, lazy, or careless").

Beyond this, Plaintiff's Complaint is completely silent regarding UC's response to her report.  Plaintiff does not allege, for example, that UC failed to respond to her complaint, or that UC took no action respecting Dr. Tetradis.

If Plaintiff's silence implies inaction by UC, that account is contradicted by the facts.  Judicially noticeable documents show that UC speedily took steps to prevent further harassment.  *See Ha*, 2014 WL 5893292, at *2 (considering response by university despite complaint's complete failure to "allege what actions [the university] actually took").  On August 10, 2018, UC sent Plaintiff a letter informing her that UC had commenced a formal investigation into her report against Dr. Tetradis.  (Decl. Ex. A; *see id.* Exs. F, G (official policies describing procedure for initiating and conducting formal investigation.)  The letter explained the procedures for such investigations and noted that Dr. Tanjaya had already "met with Title IX Investigator, Sharon Dvoretzky" as part of the investigation.  (*Id.* Ex. A at 6.)  The letter also directed Plaintiff to neutral and confidential advocates "who can serve as your advisor and/or otherwise assist you through this process."  (*Id.*)  On the same date, UC sent Dr. Tetradis a separate notice informing him of the investigation and that UC policy "prohibit[s] retaliation against a person who brings a complaint," including "threats, intimidation, reprisals, and/or adverse actions related to . . . education."  (*Id.* Ex. B at 10.)  UC warned Dr. Tetradis that "[a]ny employee who engages in retaliation may be subject to discipline, including dismissal."  (*Id.*)  During the investigation, UC found "good cause" to extend the investigatory timeline, citing "the high volume of evidence, ancillary allegations that have arisen in connection with this matter, and the number of potential new witnesses involved."  (*Id.* Exs. C, D.)  UC completed its investigation and provided Plaintiff and Dr. Tetradis with a full report on May 15, 2019.[5]

_____

[5] UC seeks judicial notice of these documents "not for the truth of the facts recited therein, but for the existence of" communications providing Plaintiff and Dr. Tetradis with notice of UC's investigation, resources for students, anti-retaliation

As the judicially noticeable documents demonstrate, UC made no "official decision not to remedy" Plaintiff's reported violation. *Oden*, 440 F.3d at 1089 (alteration omitted). In truth, UC properly "began to act as soon as it became aware of Plaintiff's allegations" and communicated frequently with Plaintiff regarding its actions. *Id.* UC's instructions to Dr. Tetradis and its investigatory timeline are consistent with—and in fact more expeditious than—other cases in which courts have rejected claims of deliberate indifference. In *Oden*, for example, the Ninth Circuit found no deliberate indifference where a university waited nine months to convene a hearing on the plaintiff's complaint. *Id.* A federal district court similarly found no deliberate indifference where the plaintiff alleged her university had taken no "action to investigate her sexual assault," and had even discouraged her from pursuing such an investigation. *Moore v. Regents of the Univ. of Cal.*, No. 15-cv-5779-RS, 2016 WL 2961984, at *6 (N.D. Cal. May 23, 2016).

Plaintiff's Complaint, moreover, contains "no allegations that the efforts undertaken by [UC] to remedy the hostile environment" and harassment were "known by [UC] to be inadequate," such that UC was deliberately indifferent because it should have taken additional steps beyond investigating Plaintiff's report and instructing Dr. Tetradis not to retaliate. *Mandel v. Bd. of Trs. of Cal. St. Univ.*, No. 17-cv-3511-WHO, 2018 WL 5458739, at *24 (N.D. Cal. Oct. 29, 2018). Plaintiff gestures vaguely at "retaliation from Dr. Tetradis and others associated with him," (FAC ¶ 26), but she does not give any particulars or allege that she experienced any further sexual harassment, *quid pro quo* demands, or other evidence of a hostile environment after UC took action. At best, this is a

---

policy, and changes to its investigatory timeline. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). The Court thus may appropriately take judicial notice of the fact that UC regularly communicated with Plaintiff and Dr. Tetradis regarding the status of its investigation and that UC provided Plaintiff and Dr. Tetradis with the information described above. *See id.*

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

"[t]hreadbare recital[ ] of the elements of a cause of action" and is legally insufficient. *Iqbal*, 556 U.S. at 678.

In short, Plaintiff has failed to allege facts suggesting that UC's response was deficient in any respect, let alone "clearly unreasonable in light of the known circumstances." *Mandel*, 2018 WL 5458739, at *23. Judicially noticeable documents make clear that UC "is not ignoring the hostile environment [or harassment] alleged by [Plaintiff]." *Id.* at *25. Even assuming Plaintiff wishes that UC had responded differently, a Title IX plaintiff is only "entitled to a fair process, not 'the precise remedy that he or she would prefer.'" *Id.* at *24; *see Davis*, 526 U.S. at 648 (holding that aggrieved parties have no "Title IX right to make particular remedial demands"). Because Plaintiff has not adequately pled deliberate indifference, her sex discrimination and hostile environment/*quid pro quo* harassment claims should be dismissed.

## 2. Plaintiff Has Not Adequately Pled that UC's Deliberate Indifference Subjected Her to Severe and Pervasive Harassment

Plaintiff's first and fourth claims fail for a second reason: Plaintiff has failed to satisfy the causation requirement for institutional liability under Title IX by alleging that UC's alleged deliberate indifference subjected her to severe and pervasive harassment.

A university is only liable under Title IX if its deliberate indifference "'cause[d] [a plaintiff] to undergo harassment or ma[d]e [her] liable or vulnerable to it.'" *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (quoting *Davis*, 526 U.S. at 645); *accord Stanley*, 433 F.3d at 1137. In other words, "Title IX liability generally flows from two periods of harassment: (a) when a school exhibits deliberate indifference *before* a harassing attack in a way that makes the student more vulnerable to the attack itself; or (b) when the school exhibits deliberate indifference *after* the attack which causes the student to endure additional harassment." *Doe v. Blackburn Coll.*, No. 06-cv-3205, 2012 WL 640046, at *7

(C.D. Ill. Feb. 27, 2012) (emphasis added).  Here, Plaintiff alleges that UC learned of Dr. Tetradis's alleged harassment only after the fact, on June 25, 2018.  (FAC ¶ 25.)  Thus, to satisfy the causation requirement, she must allege that the harassment, *quid pro quo* demands, or hostile environment that gave rise to her report continued after she made her report.  *See Reese*, 208 F.3d at 740; *Williams v. Bd. of Regents of Univ. of Ga.*, 477 F.3d 1282, 1296 (11th Cir. 2007) (holding that a Title IX plaintiff must allege that the institution's "deliberate indifference to the initial discrimination subjected the plaintiff to *further* discrimination" (emphasis added)).  Otherwise, UC "cannot be deemed to have 'subjected' [Plaintiff] to the harassment," *quid pro quo* demands, or hostile environment.  *Reese*, 208 F.3d at 740.

The First Amended Complaint does not plausibly allege that, after Plaintiff complained to UC's Title IX Office, she experienced any further sexual harassment, *quid pro quo* demands, or signs of a hostile environment.  To begin, Plaintiff does not allege any post-report misconduct by UC itself.  She alleges that a UC official "questioned her" about her "sworn statement" during a "surprise meeting," but she does not contend that the official harassed her, threatened her academic standing, or otherwise discriminated against her on the basis of sex.  (FAC ¶ 26.)  Plaintiff's only other allegation is the bare statement that "retaliation from Dr. Tetradis and others associated with him continued" and that "the reality" of her experience was thus "starkly different" from UC's "non-retaliation policies."  (*Id.*)  But she does not elaborate on the nature, methods, or extent of the retaliation that she allegedly suffered, or allege that she ever saw or communicated with Dr. Tetradis again after registering her report of sexual harassment.  "Without some facts that describe the harassment/retaliation . . . , [Plaintiff] is simply alleging a legal conclusion."  *Garcia ex rel. Marin v. Clovis Unif. Sch. Dist.*, 627 F. Supp. 2d 1187, 1197-98 (E.D. Cal. 2009) (citing *Twombly*, 550 U.S. 544).  Plaintiff's "unadorned, the-defendant-unlawfully-harmed-me accusation" does not "allow[] the court to draw the

1  reasonable inference" that UC's response to her report of sexual harassment
2  subjected her to additional misconduct.  *Iqbal*, 556 U.S. at 678.

3       Courts across the country have dismissed complaints that, like Plaintiff's,
4  entirely fail to allege subsequent harassment by either the institution or the alleged
5  harasser.  *See, e.g.*, *Ha*, 2014 WL 5893292, at *2 (dismissing Title IX claim because
6  "the Complaint does not allege any subsequent acts of harassment on Ludlow's
7  part").[6]  In *Thomas v. Meharry Medical College*, for example, a federal court
8  dismissed a Title IX discrimination claim "because Plaintiff did not continue to
9  experience sexual harassment once he put Defendant on notice of [the alleged
10 harasser's] conduct."  1 F. Supp. 3d 816, 826-27 (M.D. Tenn. 2014).  Similarly, in
11 *Moore v. Murray State University*, a federal district court held that a plaintiff's
12 "Title IX [claim] fail[ed] as a matter of law" because her "complaint contain[ed] no
13 allegations that [she] was subjected to[ ] or experienced further sexual harassment
14 after" her report.  No. 5:12-cv-00178, 2013 WL 960320, at *5 (W.D. Ky. Mar. 12,
15 2013).  For the same reasons, Plaintiff's first and fourth claims should be dismissed.

16      Plaintiff's failure to plead subsequent harassment is dispositive.  But even if it
17 weren't, Plaintiff's allegations would fall short because she has not "connect[ed]
18 [any] post-assault behavior or psychological distress to" UC's response to her report
19 of harassment.  *See Karasek*, 2016 WL 4036104, at *12.  The rare plaintiffs who
20 have been permitted to proceed without pleading additional instances of harassment
21 have made "specific allegations regarding (1) how they were forced to take drastic

22 _____

23 [6] *See also Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1126 (N.D. Cal.
24 2013) (dismissing Title IX claim because Plaintiff had failed to allege that
   university's conduct had "*caused* [plaintiff] to be subject to further harassment or
25 deprivation of rights" (emphasis in original)); *Rouse v. Duke Univ.*, 914 F. Supp. 2d
26 717, 725 (M.D.N.C. 2012), *aff'd*, 535 F. App'x 289 (4th Cir. 2013) (university was
   entitled to summary judgment because plaintiff had "offered no evidence that she
27 suffered additional sexual harassment in the months following her rape, by the rapist
   or by anyone else, much less that any such harassment was attributable to Duke's
28 alleged failure to investigate").

measures to avoid their assailants in the face of their respective schools' deliberate indifference; (2) the discomfort, anxiety, and fear they felt as a result of the constant exposure to a potential encounter with their assailants; and/or (3) how they had encountered their assailants on campus after reporting their assaults." *Id.* (internal quotation marks omitted).  That pleading burden is substantial—as it must be to prevent the deliberate indifference standard from degrading into a strict liability standard.  In *Ha*, for example, the court dismissed the plaintiff's complaint despite allegations that the plaintiff's attacker's continued presence on campus made her feel so "unsafe" that she "experience[d] panic attacks." *Ha*, 2014 WL 5893292, at *1-2.  And in *Karasek*, the court dismissed a plaintiff's sex discrimination claim where the plaintiff "allege[d] that she ha[d] suffered psychological and emotional damages," but did "not link those damages to [her assailant's] presence on campus or to discomfort or fear over encountering him there" following her report to the university.  *Karasek*, 2015 WL 8527338, at *15.  Nor did the plaintiff "allege that [she] ha[d] taken steps to avoid [her assailant] as a result of the University's deliberate indifference." *Id.*

The court's words in *Karasek* could just as easily describe Plaintiff's Complaint.  Plaintiff claims that the alleged harassment by Dr. Tetradis that she reported to UC "severely damaged" her progress in her doctoral program and that she "sustained considerable emotional harm and damage to her professional reputation."  (FAC ¶¶ 28-29.)  But she does not show that any shortcomings in UC's response to her report were a but-for cause of her alleged emotional and professional injuries.  Instead, she seeks to hold the University vicariously liable for harm caused exclusively by Dr. Tetradis's alleged conduct—a theory of liability that the Supreme Court has rejected time and again.  *See, e.g.*, *Davis*, 526 U.S. at 672; *Gebser*, 524 U.S. at 287-88.  Because Plaintiff has failed to allege that UC's alleged deliberate indifference subjected her to severe and pervasive harassment, her sex

discrimination and hostile environment/*quid pro quo* harassment claims should be dismissed.

### 3. The First Amended Complaint Does Not Supply the Necessary Factual Predicates for Injunctive Relief

As a remedy for her sex discrimination and hostile environment/*quid pro quo* harassment claims, Plaintiff seeks equitable and injunctive relief.  But her factual allegations regarding UC are so generalized that no injunction arising from her Complaint could possibly comply with Federal Rule of Civil Procedure 65(d)(1).  That Rule requires that an order granting an injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1); *see United States v. Baisden*, 692 F. App'x 878, 878 (9th Cir. 2017).  Plaintiff's Complaint does not supply the necessary factual basis for a particularized injunction.  She seeks "injunctive relief enjoining" UC "from engaging in each unlawful practice set forth above," and "equitable relief including directing" UC "to allow Plaintiff to receive equal treatment in pursuit of her Ph.D. from the School of Dentistry."  (FAC, Prayer for Relief ¶¶ 2, 6.)  As previously discussed, however, Plaintiff has not alleged any continuing conduct by UC that the Court could specifically enjoin.  *See supra* Part I(A)(1).  Her requested injunction would therefore "simply requir[e] the defendant to obey the law," which courts agree is "too vague" to pass muster under Rule 65(d).  *Keyes v. Sch. Dist. No. 1*, 895 F.2d 659, 668 (10th Cir. 1990) (striking down injunction prohibiting defendants from discriminating on the basis of race in operating school system); *see Cuviello v. City of Oakland*, No. 06-cv-5517 MHP (EMC), 2009 WL 734676, at *3 (N.D. Cal. Mar. 19, 2009) (collecting cases).  For that reason, her sex discrimination and hostile environment/*quid pro quo* harassment claims should be dismissed to the extent they seek injunctive relief.

Plaintiff separately seeks an injunction "directing Dr. Tetradis to cease any efforts to interfere with her pursuit of her doctorate."  (FAC, Prayer for Relief ¶ 6.)

1   That too is an improper basis for injunctive relief.  Even assuming that Plaintiff has

2   alleged facts regarding Dr. Tetradis's conduct with the requisite specificity, Dr.

3   Tetradis is not a party to this action.  That he is an employee of UC "does not justify

4   granting injunctive relief against [him] in [his] separate capacity."  *FTC v.*

5   *Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1104 (C.D. Cal. 2001); *see Zenith*

6   *Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 110 (1969) ("It is elementary that

7   one is not bound by a judgment in personam resulting from litigation in which he is

8   not designated as a party or to which he has not been made a party by service of

9   process.").  Accordingly, Plaintiff's claims must be dismissed to the extent they seek

10  injunctive relief against Dr. Tetradis.

11              **B.      Plaintiff Has Not Adequately Pled Her Retaliation Claim (Claim 2)**

12          Plaintiff's second claim is for retaliation in violation of Title IX.  (FAC ¶¶ 37-

13  42.)  To make out a *prima facie* case of retaliation under Title IX, Plaintiff must

14  "show[] (a) that . . . she was engaged in protected activity, (b) that . . . she suffered

15  an adverse action, and (c) that there was a causal link between the two.'"  *Ollier v.*

16  *Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014); *see Doe v.*

17  *Univ. of Pac.*, 467 F. App'x 685, 688 (9th Cir. 2012) ("To prevail on a claim of

18  retaliation under Title IX, the claimant must prove that she was retaliated against

19  because she complained of sex discrimination.").

20          Here, Plaintiff alleges that UC "retaliated against [her] by adversely affecting

21  [her] status as an orthodontic resident and PhD student and retaliating against her

22  after she complained to the Title IX office, and otherwise engaged in protected

23  activity."  (FAC ¶ 38.)  Plaintiff's retaliation claims fail on three independent

24  counts.  First, she fails to plausibly allege that she experienced an adverse action.

25  Second, she fails to allege facts demonstrating a causal link between her protected

26  activity and any adverse action.  Third, and crucially, she fails to allege that UC

27  itself engaged in retaliation.

28

1       Plaintiff has not plausibly alleged that she experienced even a single adverse

2  act after making her report to the Title IX Office.  As previously discussed, *see*

3  *supra* Part I(A)(2), Plaintiff vaguely alludes to two occurrences after she reported

4  the alleged harassment: first, questioning by a UC official regarding her "sworn

5  statement . . . in a surprise meeting," and second, unspecified "retaliation from Dr.

6  Tetradis and others associated with him."  (FAC ¶ 26.)  Plaintiff does not actually

7  call the alleged surprise meeting an example of retaliation; instead, she distinguishes

8  it as a breach of confidentiality.  (*Id.* (alleging "retaliation," by Dr. Tetradis and his

9  associates and, "[i]n addition," a breach of "confidentiality" by the UC official).)

10  Any implicit suggestion that the meeting was retaliatory is an "unwarranted

11  inference[ ]" that cannot save Plaintiff's Complaint from dismissal; the meeting she

12  describes is more consistent with a diligent and thorough response to Plaintiff's

13  report of sexual harassment than with retaliation.  *Cousins v. Lockyer*, 568 F.3d

14  1063, 1067 (9th Cir. 2009).  In any event, "not every disagreeable . . . action

15  constitutes retaliation."  *Jones v. Beverly Hills Unif. Sch. Dist.*, No. 08-cv-7201-JFW

16  (PJW), 2010 WL 1222016, at *4 n.9 (C.D. Cal. Mar. 24, 2010).  Even if viewed

17  negatively, the alleged meeting qualifies at most as "the kind of petty slight or minor

18  annoyance that does not constitute an adverse act" for purposes of establishing

19  retaliation.  *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 769 (D. Md. 2015); *see*

20  *Ollier*, 768 F.3d at 869 (holding that, to satisfy the adverse action requirement, an

21  alleged action must be "materially adverse").

22       Likewise, Plaintiff's allegation regarding Dr. Tetradis does not count as an

23  adverse act.  In the first place, she has not supported her conclusory allegation with

24  "sufficient factual matter, accepted as true," to be "plausible on its face."  *Iqbal*, 556

25  U.S. at 678; *see supra* Part I(A)(2).  Moreover, Plaintiff alleges that Dr. Tetradis's

26  purported actions, whether before or after her report to the Title IX Office, stemmed

27  from his desire to "us[e] Plaintiff to cause harm to Dr. Ting," such that Dr. Ting

28  "suffered considerable personal and professional harm."  (FAC ¶ 27.)  A plaintiff

cannot premise a retaliation claim under Title IX on retaliatory acts directed at a third party.  *See Davis v. Folsom Cordova Unif. Sch. Dist.*, No. 11-cv-1242 KJM DAD PS, 2013 WL 268925, at *11 (E.D. Cal. Jan. 23, 2013), *report & recommendation adopted by* 2013 WL 1325273, *aff'd*, 674 F. App'x 699 (9th Cir. 2017); *Jones*, 2010 WL 1222016, at *3-4 (dismissing Title IX claim by mother premised on retaliation against daughter).  Plaintiff's failure "to allege that [she herself] suffered any adverse action" is fatal to her Title IX retaliation claim.  *Davis*, 2013 WL 268925, at *11.

Next, Plaintiff "does not allege that" any misconduct by any person that followed her report was "causally related to her" report.  *Ha*, 2014 WL 5893292, at *3.  Plaintiff does not assert that UC or Dr. Tetradis acted as they allegedly did *because* she filed her report.  (FAC ¶¶ 26-28.)  She does not so much as allege, for example, that Dr. Tetradis knew of her complaint when he and his associates allegedly retaliated against her.  *See Emeldi v. Univ. of Oregon*, 698 F.3d 715, 727 & n.4 (9th Cir. 2012) (finding causation only where plaintiff "articulated a theory of how [the alleged retaliator] found out about her complaints" before engaging in retaliation).  The sequence of events cannot alone demonstrate causation.  *See id.* (noting that courts have found no causation where the delay between a complaint and the alleged retaliatory act was "too great to support an inference" of retaliation).  In the absence of allegations that any person "acted with a retaliatory motive or that the non-retaliatory motive given for" the challenged "actions was pretextual," Plaintiff has not adequately pled causation.  *Doe*, 467 F. App'x at 689; *see Sanchez v. Brawley Elem. Sch. Dist.*, 719 F. App'x 723, 724 (9th Cir. 2018) (affirming grant of summary judgment for defendant because plaintiff failed to establish that the adverse action occurred as a result of the protected activity).

Finally, and most importantly, Plaintiff "has failed to allege that the [University], as opposed to an individual, retaliated against" her."  *Davis*, 674 F. App'x at 702; *see Doe*, 467 F. App'x at 689 (granting summary judgment because

"there is no evidence that the *university*" retaliated (emphasis added)).  A "plaintiff may not recover against [a university] for alleged Title IX violations," including retaliation, "based solely on principles of *respondeat superior*."  *Davis*, 674 F. App'x at 702 (citing *Gebser*, 524 U.S. at 285).  The Supreme Court has recognized a private right of action for retaliation "where the *funding recipient* retaliates against an individual because he has complained about sex discrimination," *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005) (emphasis added), but neither the Supreme Court nor the Ninth Circuit has extended that private right of action to claims of retaliation based solely on a third party's acts.  Assuming for the sake of argument that such a claim is available, Plaintiff would—as in all Title IX claims against universities that depend on allegations of third-party misconduct—need to satisfy *Davis* and *Gebser*'s deliberate-indifference standard.  *See Mansourian*, 602 F.3d at 967 (emphasizing that deliberate indifference is the standard for claims involving "acts that 'do not involve official policy of the" institution).  That Plaintiff has not done.  *See supra* Part I(A).

## II. Plaintiff's State-Law Claim (Claim 3) Fails for Four Independent Reasons

Plaintiff's third claim asserts a violation of California Government Code § 11135, which provides that "[n]o person in the State of California shall, on the basis of sex, . . . be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."  (FAC ¶¶ 43-52.)  Plaintiff's Section 11135 claim fails for four independent reasons.

First, if the Court dismisses Plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's Section 11135 sex discrimination claim.  *See* 28 U.S.C. § 1367(c)(3); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001).  When "'all federal-law claims are eliminated before trial, the

balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Whitaker v. BOP FIGAT7TH LLC*, No. 18-cv-1360-RSWL-E, 2019 WL 1081207, at *3 (C.D. Cal. Mar. 6, 2019) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Here, the "values of 'economy, convenience, fairness, and comity'" counsel in favor of dismissing Plaintiff's state-law claim. *Id.* (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7). Avoiding a "[n]eedless decision[] of state law" will "promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Second, even if the Court reaches Plaintiff's Section 11135 claim, her failure to allege that she administratively exhausted that claim justifies dismissal. Federal courts have recognized "an exhaustion requirement for a claim brought pursuant to § 11135." *Santos v. Merritt Coll.*, No. 07-cv-5227 EMC, 2008 WL 2622792, at *3 (N.D. Cal. July 1, 2008); *see, e.g.*, *M.S. v. Cty. of Ventura*, No. 16-cv-3084-BRO (RAOx), 2016 WL 11506613, at *15 (C.D. Cal. Oct. 24, 2016) (dismissing claim for failure to exhaust); *J.E.L. v. San Francisco Unif. Sch. Dist.*, 185 F. Supp. 3d 1196, 1201 (N.D. Cal. 2016) (same); *Davis v. Cal. Health & Human Servs. Agency*, No. 00-cv-2532 SBA ADR, 2001 WL 1772763, at *1 (N.D. Cal. Aug. 21, 2001) (same); *see also* 2 Cal. Code of Regs. § 11143 (indicating that exhaustion of administrative remedies is required except in specified circumstances). Exhaustion in this context involves "fil[ing] a complaint with the agency involved"—here, the University. *M.S.*, 2016 WL 11506613, at *15. Plaintiff does not mention the exhaustion requirement or allege that she made any complaint pursuant to Section 11135 to the University. (FAC ¶¶ 11-29, 43-52.)

Third, Plaintiff's request for damages, (FAC ¶ 50), contravenes state law. The only available remedy for a Section 11135 claim is equitable relief. *See* Cal. Govt. Code § 11139 (providing that Section 11135 "may be enforced by a civil action for equitable relief"); *Prescott v. Rady Children's Hosp.—San Diego*, 265 F.

Supp. 3d 1090, 1102 (S.D. Cal. 2017) ("Remedies for violations of Government Code section 11135 . . . are limited to 'a civil action for equitable relief.'"). Accordingly, Plaintiff's Section 11135 claim should be dismissed to the extent Plaintiff seeks damages.

Fourth, Plaintiff's Section 11135 claims fail on the merits for the same reasons that her Title IX claims fail. As the Ninth Circuit has explained, the text of Section 11135 is virtually identical to that of its federal equivalents. *See Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 519 (9th Cir. 2011). "In light of the parallel language of state and federal law, federal law provides important guidance in analyzing" claims pursuant to Section 11135. *Id.*; *see also Donovan v. Poway Unif. Sch. Dist.*, 167 Cal. App. 4th 567, 595, 605 (2008) (explaining that "[w]here . . . California law is modeled on federal laws, federal decisions interpreting substantially identical statutes are unusually strong persuasive precedent on construction of our own laws," and "adopting Title IX's standards" in case arising under similar state antidiscrimination provision); *City & Cty. of San Francisco v. Fair Emp. & Housing Comm'n*, 191 Cal. App. 3d 976, 985-86 (1987) ("California courts have often turned to federal Title VII authority to interpret analogous provisions of the [California] Fair Employment and Housing Act.").

Indeed, a state statutory provision specifically provides that that Section 11135, Title IX, and the California Education Code's antidiscrimination provision are all to be interpreted consistently. *See* Cal. Educ. Code § 201(g) (providing that the Education Code's antidiscrimination provision "shall be interpreted as consistent with . . . Section 11135 . . . , and Title IX"). Applying that provision, the California Court of Appeal has held that Title IX, Section 11135, and the Education Code's antidiscrimination provision are "analogous" and has applied federal Title IX law— including its deliberate indifference standard and rejection of *respondeat superior* liability—in the Education Code context. *Donovan*, 167 Cal. App. 4th at 579, 605. To apply a different standard to claims arising under Section 11135, on which "the

1   Legislature relied . . . when it enacted" the Education Code's antidiscrimination

2   provision, *id.* at 593, would undercut the California Court of Appeal's reasoning and

3   introduce unwarranted disparities into the interpretation of closely related state laws.

4   Thus, for the reasons provided above in relation to Plaintiff's federal claims, *see*

5   *supra* Part I(A), Plaintiff's state-law claim must be dismissed.

6                              **CONCLUSION**

7        For the foregoing reasons, Defendant The Regents of the University of

8   California respectfully request that the Court dismiss all claims in Plaintiff's First

9   Amended Complaint with prejudice.

10

11   DATED:  June 27, 2019              MUNGER, TOLLES & OLSON LLP

12                                         HAILYN J. CHEN
                                           USHA C. VANCE
13

14

15                                  By:      /s/ *Usha C. Vance*
                                        _____
16                                      USHA C. VANCE
                                        Attorneys for The Regents of the University of
17                                      California

18

19

20

21

22

23

24

25

26

27

28